**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JAMES BURKE, an individual, by and through his Guardian Ad Litem; ALYSSA BURKE, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>USF REDDAWAY INC., a corporation,<br><br>Defendant. | 3:13-cv-00017-LRH-WGC<br><br>**ORDER**<br><br>re: Motion to Quash (Doc. # 49)<br>and<br>Production of Redacted Vazeen Records |

Before the court is Defendant USF Reddaway's Notice of Compliance. (Doc. # 81.) Defendant's notice advises the court and counsel that a copy of Steve Kytle's medical record from Dr. Mehdi Vazeen have been submitted to the court for *in camera* review as was required by this court's order following the January 14, 2014, discovery conference. (Doc. # 71.)

**I. Background**

This lawsuit has arisen from a motor vehicle accident which occurred in Sparks, Nevada, on August 5, 2011. Plaintiff alleges that at approximately 9:00 p.m., Plaintiff James Burke ("Burke") was walking across Greg Street at or near the intersection of 21st Street. As Burke crossed the center divider separating the eastbound and westbound traffic, he was struck by USF Reddaway's ("Reddaway") Freightliner truck with two attached 25 foot semi trailers. (Doc. #1 at 5-7).

The Reddaway tractor-trailer was operated by its driver, Steve Kytle; Mr. Kytle is not a party to this litigation. (Doc. # 50 at 3.) Defendant alleges Burke was crossing Greg Street "in the middle of the street and at on unmarked and dark location without a designated crosswalk." Defendant contends that

1  after Burke was transported to the hospital, it was ascertained Plaintiff's **[his ?]** blood alcohol level was
2  at 0.230, "just short of three times the legal limit to drive in Nevada." (*Id*.)

3  Although the Reddaway driver (Mr. Kytle) was not named a defendant in this action, Reddaway
4  admits Mr. Kytle was an agent or employee of Defendant. (Doc. # 6 at 3, ¶ 15.) Reddaway denies that
5  either it or its agent Mr. Kytle was negligent, but that in any event, any negligence of Defendant was
6  exceeded by that attributed to Plaintiff Burke, thereby precluding any recovery. (*Id*., at 5l ¶ 7.)

7  During discovery conducted in this matter, an issue arose as to whether Mr. Kytle should have
8  seen Burke when he (Burke) was crossing the street and whether his (Mr. Kytle's) vision acuity played
9  any role in not detecting the Plaintiff.  It appears Mr. Kytle testified at deposition that at the time of the
10 accident, he did not require corrective lenses to operate a commercial vehicle. He may have erroneously
11 stated he was prescribed corrective lenses in January of 2012 (which would have been about five months
12 after the accident), when he may actually have received that prescription in January of 2013. (Doc. # 50
13 at 3; Doc. 41 at 23-26.)

14 Because of this information, Plaintiff made a motion to extend discovery and expert disclosure
15 deadlines. (Doc. # 41.) After hearing arguments of counsel, the court found there was good cause to
16 extend the expert deadline with respect to a "vision" expert. (Doc. # 47 at 1.) The court allowed Plaintiff
17 to re-depose Mr. Kytle as to any vision issues. The court also directed Defendant to provide Plaintiff
18 Mr. Kytle's most recent (post accident) Department of Transportation medical examinations and to file
19 a notice of corrections as to Mr. Kytle's previous deposition examination. (*Id*.)

20 Thereafter, Plaintiff served subpoenas duces tecum on several of Mr. Kytle's health care
21 providers, to which Defendant filed motions to quash. (Doc. # 49, and # 60.)[1] This present order pertains
22 mainly to Plaintiff's attempts to secure the records of Mehdi Vazeen, M.D., a medical provider (vision)
23 who treated Mr. Kytle both before and after the accident. (Doc. # 49.)

24 Defendant argued, *inter alia*, that since Mr. Kytle was not a party, his medical records were not
25 discoverable. (Doc. # 50.) Defendant further argued that sufficient medical information regarding

---

27 [1] Doc. # 49 pertained to a subpoena of vision provider Mehdi Vazeen, M.D. Doc. # 60 pertained to subpoenas issued
28 to providers Mark Mannis, M.D., and Lenscrafters.  The Defendant's motion to quash as to Doc. # 60 was granted as to the
records Plaintiff sought to obtain from Lenscrafters and Dr. Mannis. (Doc. # 71 at 2.)

2

1  Mr. Kytle's health, including his vision records, have been produced, including his 2011 (pre-accident)
2  and 2012 (post-accident) Department of Transportation physicals. Defendant stated "Mr. Kytle had
3  simply mis-testified regarding the precise dates during his deposition." (Doc # 50 at 3-4.)
4      Plaintiff opposed the motion to quash the subpoena duces tecum. Plaintiff's argument as to the
5  subpoenas regarding the vision providers was stated as follows:

> Moreover, discovery has also revealed issues regarding the credibility of Mr. Kytle's testimony about his vision. He previously made contradictory statements about when he was first prescribed glasses (Ex. 2, "E-Mail re Depo. Errors.") He has now made specific claims about being prescribed glasses and obtaining those glasses on a single day during a break in his annual Department of Transportation (DOT) eye evaluation. (Ex. 2, p. 205; Ex. 8, "DOT Exam 2013.") This claim appears on its face to strain credulity, but can easily be substantiated or contradicted by the records Plaintiff has subpoenaed. And Mr. Kytle's credibility regarding what he saw at the time of the collision was already in question based on the various accounts he has given. (Ex. 3, "Traffic Incident Report [Redacted]," pp. 19, 28; Ex. 4, "1st Kytle Depo.," pp. 131-36.)
>
> Plaintiff simply seeks the truth regarding the critical issue of Mr. Kytle's vision–which was precisely the point of the Court's order under which this discovery is being conducted. The Court specifically extended discovery to permit a further deposition of Mr. Kytle regarding his vision, and explicitly permitted inquiry into "the identity of any health care providers who examined him for matters relating to his vision and the nature of the treatment he was provided." (Doc. # 45, 3:27-4:4.) The Court also extended the discovery deadline to January 8, 2014. (*Id.* 4:10-12.) The Court, therefore, clearly intended Plaintiff to learn the identities of Mr. Kytle's eye care treaters, the nature of the treatment, and have time to obtain their records.

19  (Doc. # 57 at 2:20-3:12.)
20      Additionally, Plaintiff referenced a more specific pre-accident vision issue pertaining to
21  Mr. Kyle, i.e., a diagnosis of "Fuchs' dystrophy":

> These records are of particular relevance given the newly revealed information, including a diagnosis of Fuchs' dystrophy, disclosed by Mr. Kytle at his deposition. (Ex. 1, pp. 189-90, 193.) Fuchs' dystrophy is "a disease of the cornea which is known to reduce contrast sensitivity and to produce problems with night driving." (Ex. 5, "Post Expert Rpt.," p. 2.) Plaintiff's visual perception expert, Dr Post has opined that the condition may well have impacted Mr. Kytle's ability to perceive Mr. Burke if the condition existed at the time of the collision. (Id.) The only way this can be determined is through the records subpoenaed.
>
> Moreover, Mr. Kytle's annual DOT eye examinations were not conducted by a certified medical examiner or licensed optometrist, as required by DOT regulations. 49 C.F.R. §§ 390.5, 391.43 (a)-(b); (Ex. 6, "Patin

3

Depo.," pp. 20-21, 23-24, 38-40; Ex. 9, "Meyer Depo.," pp. 23-25). Indeed the 20/40 right-eye vision recorded for Mr. Kytle in his 2011 DOT exam prior to the collision would be borderline not only under both DOT standards but also under Nevada's vision screening standards for non-commercial drivers, even without a progressive eye disease such as Fuchs' dystrophy. 49 C.F.R. § 291.40(b)(10); Nev. Admin Code §483.340; (*Id.*; Ex. 7, DOT Rpts.," p. 000646).

(*Id.*, at 3:23-4:13.)

Defendant replied to Plaintiff's arguments, contending the vision issue is a "red-herring" because Mr. Kytle's pre and post accident DOT examinations indicated he "was qualified to drive without any restriction on his vision." (Doc. # 59 at 2, 3; footnote omitted.)[2]

The court conducted an expedited hearing on Defendants' motions to quash subpoenas on January 14, 2014. (Doc. # 71.) The court quashed the Plaintiff's subpoenas served on two of Mr. Kytle's vision providers, Lenscrafters and Dr. Mark Mannis, because Mr. Kytle had not consulted either of these providers until approximately one and one half years <u>after</u> the subject incident. (Doc. # 50 at 2; Doc. # 71 at 2.)

However, as to vision care which preceded the accident and any pre-accident treatment for a vision condition known as "Fuchs' dystrophy," the court ordered:

> To the extent Plaintiff is seeking information relating to any treatment Mr. Kytle had concerning eye care, this information shall be produced and defendants's motion to quash is denied. However, the medical records produced by Dr. Vazeen shall be submitted for an *in camera* review by the court. Defense counsel shall secure a medical authorization from Mr. Kytle and secure the records from Dr. Mehdi Vazeen. A complete record shall be produced to the court. Defense counsel shall bates stamp the records prior to hand delivering them in a sealed envelope to chambers. Defense counsel are instructed to file a notice with the court once they have produced the documents for the *in camera* inspection.
>
> The court will determine what documents are appropriate to produce to plaintiff and whether redaction(s) are necessary. If the court finds it necessary to schedule a hearing regarding the records, the court will schedule a date and time that is convenient for all parties. The court

---

[2] Defendant again disputed whether there has been an express or implied waiver by Mr. Kytle of the patient-physician privilege. (Doc. # 59 at 3–5); see also Doc. # 50 at 5-8.) This court did not specifically rule on the issue of whether there had been a waiver of the privilege. (Doc. # 74 at 53-56.) Although Mr Kytle is not a party defendant, nevertheless Reddaway is vicariously liable for any negligence, if any there is, attributable to its driver Steve Kytle. (Doc. #6.) Thus, the court determines there is certain relevance from the standpoint of discoverability with regard to his visual acuity as may be addressed in his vision records.

notes, depending upon the outcome of the *in camera* review of the records, the discovery deadlines (Doc. # 40) may need to be revised; which again the court will address at a later time if necessary.

(Doc. # 71 at 2.)

The court limited the examination of Dr. Vazeen's records to any "vision issues for which [Mr. Kytle] was treated." (Doc. # 74 at 57.) However, as noted above, this court acquiesced in the request of Defendant's counsel that the court first undertake an *in camera* inspection before Dr. Vazeen's records are produced in this matter.

**II.  *In Camera* Review**

Defendant's counsel has submitted documents bates stamped as VAZEEN 001-012. The court has undertaken a review of the Vazeen records. The court determines the records should be produced to Plaintiff's counsel, with the following redactions to be made by Defendant's counsel:

| | |
|---|---|
| VAZEEN002: | The non-ocular medications identified on this page should be redacted; the court determines none of the medications is relevant to any claim in this case. |
| VAZEEN 010-012: | 3/13/13 consultation report of Mark Mannis, M.D. The court has previously ruled the post-accident treatment records of Dr. Mannis need not be produced. (Doc. # 72 at 2.) |

Counsel for Defendant is directed to effect the above described redactions and to thereafter serve a copy of the redacted Vazeen records on Plaintiff's counsel.

Counsel for Defendant shall contact Courtroom Administrator Katie Ogden (775.686.5758) to make arrangements to pick up the Vazeen records submitted *in camera*.

**IT IS SO ORDERED.**

**DATED:  February 25, 2014.**

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE

5